**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>$671,160.00 IN U.S. CURRENCY,<br>*Defendant*,<br><br>and<br><br>MIKE IONITA,<br><br>*Claimant-Appellant*. | No. 11-56924<br><br>D.C. No.<br>2:10-cv-08934-<br>GW-AGR<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Submitted August 9, 2013[*]
Pasadena, California

Filed September 18, 2013

Before: Richard C. Tallman, Richard R. Clifton,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tallman

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

**Civil Forfeiture / Fugitive Disentitlement Statute**

The panel affirmed the district court's dismissal, based on the Fugitive Disentitlement Statute, of Mike Ionita's verified claim to $671,170 in currency seized from a vehicle rented by Ionita, and the resulting default judgment in favor of the United States.

The panel held that Ionita, who returned to his home in Canada before a criminal complaint was filed in California in this case, met the statutory definition of a fugitive from justice. The panel held that the totality of the circumstances supported the district court's conclusion that Ionita had intentionally declined to return to the United States so as to avoid submitting to the jurisdiction of the California courts and consequently facing the criminal charges pending against him, and as a result Ionita was a fugitive under 28 U.S.C. § 2466. The panel also held that the district court did not err in denying Ionita's request to convert the government's motion to strike into a motion for summary judgment. Finally, the panel declined to address Ionita's remaining arguments because they were barred by the Fugitive Disentitlement Statute, which prohibits him from litigating issues related to his pending criminal case without subjecting himself to the jurisdiction of the Los Angeles County criminal court.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Paul L. Gabbert, Santa Monica, California, for Claimant-Appellant.

Katharine Schonbachler, Assistant United States Attorney; Steven R. Welk, Assistant United States Attorney, Chief, Asset Forfeiture Section; Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division; André Birotte, Jr., United States Attorney, United States Attorneys' Office, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

TALLMAN, Circuit Judge:

This case involves the forfeiture of $671,170 in currency seized from a vehicle rented by Mike Ionita, a Canadian citizen. On the government's motion, the district court invoked the Fugitive Disentitlement Statute, codified at 28 U.S.C. § 2466,[1] to strike Ionita's claim to the funds.

---

[1] 28 U.S.C. § 2466 provides, in relevant part:

> (a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—
>
> (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—

Through an attorney, Ionita appeals the district court's dismissal of his verified claim and answer, and the resulting default judgment in favor of the United States, contending that he does not meet the statutory definition of a fugitive from justice. We conclude that he does. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

I

Ionita was watched by Anaheim police officers exchanging luggage with a known narcotics dealer in the parking lot of a local hotel.  The officers called for a marked police car to initiate a traffic stop, and a subsequent search of Ionita's vehicle revealed substantial amounts of currency in the trunk.  Ionita insisted that the money was not his and that he had no idea how it got there or to whom it belonged.  The money was seized, Ionita was released, and he later returned to Canada.

On November 19, 2010, the government commenced an *in rem* civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6) against $671,160 in U.S. currency seized from

---

  (A) purposely leaves the jurisdiction of the United States;

  (B) declines to enter or reenter the United States to submit to its jurisdiction; or

  (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

  (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

Ionita's rental car.  The government contended that the money was subject to forfeiture on the grounds that the funds represented or were traceable to proceeds of illegal narcotics trafficking, or were intended to be used in one or more exchanges for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841, et seq.

A

The government detailed in its civil complaint the events leading to the seizure of the defendant currency from Ionita on May 27, 2010.  In relevant part, it alleged that "[i]n May 2010, Ionita was identified as a member of a Canadian based narcotics trafficking organization responsible for transporting large sums of U.S. currency within the United States and purchasing large quantities of cocaine for distribution in Canada."

The complaint further alleged that, on May 27, 2010, Anaheim police officers observed Ionita enter a hotel parking lot while driving a white Mercedes Benz.  In the parking lot, Ionita approached a 2007 Cadillac Escalade pickup truck registered to Robert Russell Allen, who "ha[d] an extensive criminal history including multiple narcotics arrests and convictions, including but not limited to cocaine conspiracy and money laundering."  The truck's driver, identified as Allen, removed two pieces of luggage, a black carry-on suitcase and a black duffle bag, from his Escalade and transferred them to the trunk of Ionita's Mercedes Benz. Surveillance photos captured the exchange.  Allen and Ionita then left the parking lot in their respective vehicles.

Officers believed that "[t]he conduct of the two men [observed in the hotel parking lot] was consistent with a

delivery of drugs or drug-related money." To confirm their suspicions, Anaheim police officers requested that an officer in a marked El Monte police car conduct a traffic stop on Ionita's vehicle. The stop was initiated after Ionita changed lanes without signaling, in violation of California Vehicle Code § 22107. After being stopped, Ionita provided the uniformed officer with his Canadian driver's license and rental car agreement, but was unable to recall the addresses for the locations that he was purportedly visiting in Hollywood and Ontario.

His suspicions aroused, the El Monte officer requested Ionita's consent to search his vehicle, which Ionita refused. The officer then called for a narcotics-detecting canine to sniff the exterior of the Mercedes Benz. After the canine alerted to the odor of narcotics coming from three sections of the vehicle, the officer conducted a search of the Mercedes Benz and located the two pieces of luggage stored in the trunk. Upon opening the luggage, the officer discovered $671,170 in U.S. currency.

Ionita denied any knowledge of the luggage and immediately signed a disclaimer of ownership form for the defendant currency. Police then seized and later transferred the funds to the Drug Enforcement Administration for further investigation and to initiate federal forfeiture proceedings. Ionita was not detained further and he ultimately returned to Canada, where he continues to reside.

B

On December 17, 2010, the Los Angeles County District Attorney filed a criminal complaint charging Ionita with violating California Health & Safety Code § 11370.6(a) by

"possessi[ng] money or instruments over $100,000 . . . which were obtained as the result of the unlawful trafficking of [a] controlled substance . . . and . . . possess[ed] . . . with the intent to unlawfully purchase [a] controlled substance." On December 21, 2010, a California Superior Court judge signed a felony warrant authorizing Ionita's arrest on the pending criminal charge. Bail was fixed by the court at $600,000. Although Ionita has been notified of the charge, he has not appeared in Los Angeles to contest or answer the criminal charge.

Instead, Ionita has only appeared in the United States District Court, through counsel, to contest the civil forfeiture proceedings. On December 20, 2010, Ionita filed a verified claim "demand[ing] restitution of the defendant $671,160 [sic] in U.S. currency." Additionally, on February 10, 2010, Ionita formally answered the forfeiture complaint, generally denying the allegations of criminal activity and asserting that he was the true owner of the seized funds.

Because Ionita had not surrendered on the criminal arrest warrant, the government filed a motion to strike Ionita's claim pursuant to the Fugitive Disentitlement Statute, codified at 28 U.S.C. § 2466. Despite numerous opportunities afforded by the district court, Ionita has not personally appeared in Los Angeles to contest the application of the statute. Additionally, in response to discovery propounded by the United States in the forfeiture case, Ionita has asserted his Fourth, Fourteenth, and Fifth Amendment rights. After reviewing extensive briefing, evidentiary submissions, and holding hearings, the district court granted the government's motion to strike, ruling that Ionita's claim was barred by the statute. With no other claimants to the forfeited funds, the court granted a motion for default and

entered judgment against the defendant *res* in favor of the United States. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

While we review the legal applicability of the Fugitive Disentitlement Statute de novo, we review a district court's decision to order disentitlement for abuse of discretion. *Collazos v. United States*, 368 F.3d 190, 195 (2d Cir. 2004); *United States v. Salti*, 579 F.3d 656, 662–63 (6th Cir. 2009). We consider the government's motion to strike a claim pursuant to the statute "as something like a motion to dismiss, [where we can] look[] to matters outside the pleadings, and . . . , where appropriate, allow[] for the possibility of conversion to summary judgment." *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 38 (D.D.C. 2007).

## III

28 U.S.C. § 2466 has five required elements:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant or process; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by leaving the United States, declining to enter or reenter the country, or

> otherwise evading the criminal court's jurisdiction.

*United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 886 (9th Cir. 2009). Ionita concedes that all of the elements of the Fugitive Disentitlement Statute are met but one—whether he remains outside of the United States "in order to avoid criminal prosecution"—in other words, whether he meets the statutory definition of being a fugitive from justice.

### A

Ionita argues that he returned to his home in Vancouver, Canada, before the criminal complaint was filed in this case and, therefore, he cannot be said to have left the United States "in order to avoid criminal prosecution." 28 U.S.C. § 2466(a)(1). Instead, Ionita claims that he remains in Canada not to "evade the [state] court's jurisdiction," but insists that he "merely returned to his home." Ionita argues that "the fugitive disentitlement statute [cannot] be satisfied simply by continuing to live in one's own country at the time that a charging document was filed in a state court."

Ionita's arguments primarily relate to the time period after he returned to Canada and before the California criminal complaint was filed. However, Ionita may still be considered a fugitive, as that term is defined in § 2466, if he failed to "enter or reenter the United States" in order to avoid criminal prosecution once he learned that the California complaint had

been filed and a warrant for his arrest had issued.[2]  28 U.S.C. § 2466(a)(1)(B).  It is of no consequence that Ionita did not flee the jurisdiction upon learning of the criminal complaint and warrant for his arrest.  Instead, according to the statutory text, a claimant may still be a fugitive if, while legally outside the jurisdiction, he decides not to return to the United States to face a pending criminal charge.  *Id*.  There is no dispute that Ionita knows full well that he is wanted by the State of California.  Ionita's attempt to reclaim the defendant funds by litigating the civil forfeiture claim while avoiding answering the criminal charge is precisely the situation that the Fugitive Disentitlement Statute was enacted to address.

B

The totality of the circumstances supports the district court's conclusion that Ionita has intentionally declined to return to the United States so as to avoid submitting to the jurisdiction of the California courts and consequently facing the criminal charge pending against him.  As a result, we conclude that Ionita is a fugitive, as set forth in § 2466(a)(1), since he made a conscious choice to not "enter or reenter the

---

[2] The existence of other factors that might have also motivated Ionita to remain abroad, such as his Canadian citizenship and residency, does not undermine or foreclose the district court's finding that Ionita made a conscious choice to not "enter or reenter the United States" in order to avoid criminal prosecution.  28 U.S.C. § 2466(a)(1)(B).  Ionita's desire to evade criminal prosecution need not be the sole motivating factor causing him to remain abroad, to the exclusion of all others.  All that is required is a finding that "after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution," Ionita "declines to enter or reenter the United States to submit to its jurisdiction."  *Id*.  There is sufficient evidence here to support that determination.

United States" in order to avoid criminal proceedings or is otherwise evading the jurisdiction of the California Superior Court where the criminal case against him is pending.

We acknowledge that our sister circuit has held that "mere notice or knowledge of an outstanding warrant, coupled with a refusal to enter the United States, does not satisfy the [fifth element of the fugitive disentitlement] statute." *United States v. $6,976,934.65 Plus Interest*, 554 F.3d 123, 132 (D.C. Cir. 2009). However, in the case before us, the evidence demonstrates more than mere notice and refusal.

The evidence here establishes that, after learning that there was a criminal complaint and warrant issued for his arrest, Ionita has not returned to contest or answer the criminal charge.[3] Ionita's self-enforced absence from the United States stands in marked contrast to his extensive travel to California prior to the issuance of the pending criminal charge. The district court properly relied on Ionita's failure to return, which appears to be deliberate in light of his

---

[3] The text of the Fugitive Disentitlement Statute does not support Ionita's argument that the government must initiate formal or informal methods to extradite a claimant or return him to the United States before it may invoke the statute and strike a fugitive's claim. 28 U.S.C. § 2246. We do not impose such a requirement. Actual knowledge that criminal charges are pending, and a refusal to return to the United States in order to avoid answering to those charges, will suffice for due process purposes. The record shows that Ionita has been in regular contact with his counsel in Los Angeles and is well aware that he is a wanted man. One of his reasons for not returning to the United States is his unwillingness to post the bail fixed by the California Superior Court judge who issued the arrest warrant.

behavior and actions during the civil forfeiture proceedings as set forth below.

Ionita has declined numerous opportunities to personally appear at hearings in the civil forfeiture proceedings, despite his interest in now formally claiming entitlement to the substantial funds to which he initially disclaimed ownership when stopped on May 27, 2010. Additionally, the district court could properly conclude by adverse inference that Ionita's refusal to answer the special interrogatories propounded by the government, instead asserting his Fourth, Fourteenth, and Fifth Amendment rights, was evidence of Ionita's intent to avoid criminal prosecution and to selectively use the courts to his own favor. *See United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82–83 (2d Cir. 1995) (applying the doctrine of adverse inference in a civil forfeiture action).

Lastly, before the district court, Ionita represented that the bail set in his criminal case "makes it impossible for him to return to the United States." In a hearing on the government's motion to strike, Ionita's counsel stated that the Los Angeles County District Attorney "filed the criminal case . . . [t]hereby, basically putting this humongous roadblock into [Ionita] coming back into the United States." These statements confirm that Ionita remains in Canada in order to avoid execution of or surrendering to the outstanding arrest warrant should he cross back into the United States.[4]

---

[4] We decline to adopt Ionita's argument that these statements were made solely to support his allegation of government overreaching. On appeal, Ionita's statements before the district court cannot be so compartmentalized and only considered when favorable to the appellant. Instead, a court must interpret the record, and the statements contained in

There are sound policy reasons for applying the Fugitive Disentitlement Statute in this case.  The Fugitive Disentitlement Doctrine "is grounded on the impropriety of permitting a fugitive to pursue a claim in federal court where he might accrue a benefit, while at the same time avoiding an action of the same court that might sanction him." *United States v. Eng*, 951 F.2d 461, 465 (2d Cir. 1991).  That is precisely the tactic that Ionita seeks to employ in this case. Ionita, "facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *Collazos*, 368 F.3d at 200.  Accordingly, the district court could readily conclude, based on the totality of the evidence, that Ionita has "decline[d] to enter or reenter the United States to submit to its jurisdiction" in order to avoid criminal prosecution. 28 U.S.C. § 2466(a)(1)(B).  The fifth element is met, as the district court properly found.

IV

Ionita argues that, even if all elements of the Fugitive Disentitlement Statute have been satisfied, the district court nonetheless abused its discretion in striking his answer and claim to the defendant currency.  Ionita notes that § 2466 does not mandate disentitlement but rather, "[a] judicial officer *may* disallow a person from using the resources of the courts of the United States." 28 U.S.C. § 2466(a) (emphasis added).    "[T]he ultimate decision whether to order disentitlement in a particular case rests in the sound discretion

———————————

it, according to their natural and rational meaning as applied to all of the issues presented in the case.

of the district court." *$6,190.00*, 581 F.3d at 886 (internal quotation marks omitted).

Ionita alleges that the district court should have declined to order disentitlement in light of evidence of government overreaching.    Ionita argues that the federal and state government must have colluded in a nefarious plot to bolster the civil forfeiture case and prevent Ionita from reclaiming his property.    As evidence of this collusion, Ionita relies primarily on a timing argument—that the Los Angeles County District Attorney filed criminal charges against Ionita one day after Ionita executed a verified claim to the defendant currency.

After requesting briefing, holding hearings, and reviewing submitted evidence, the district court properly found that Ionita's accusations were baseless since criminal charges were being pursued before Ionita ever filed a claim in the forfeiture action.[5]    The district court found that a superior court case number was issued and the felony complaint was actually signed four days before Ionita filed his federal claim. In light of this evidence, we conclude that the district court did not abuse its discretion in disentitling Ionita under § 2466 and striking his answer and claim to the forfeited funds.

---

[5] The district court reviewed "the evidentiary material that was used for establishing probable cause for [Ionita's] arrest . . . and also for the subsequent issuance of the felony arrest warrant."    The district court agreed with the Superior Court and concluded "based upon what the government has provided that there was sufficient evidence of probable cause vis-a-vis the crime."

V

Ionita also contends that the district court erred by not converting the government's motion to strike into a motion for summary judgment.  Ionita alleges that the court should have allowed the parties to take additional discovery prior to concluding that Ionita is a fugitive within the meaning of 28 U.S.C. § 2466.  Ionita's claim of error is perplexing, given his refusal to participate in or respond to discovery propounded by the United States in the district court action. Instead, Ionita asserted his Fifth, Fourteenth, and Fourth Amendment rights in response to the government's interrogatories.  Further, discovery on this subject would be unnecessary and futile and the district court could properly draw an adverse inference from Ionita's invocation of his right to remain silent by refusing to answer the questions propounded.  *Certain Real Property*, 55 F.3d at 82–83. Ionita's reasons for remaining in Canada lie exclusively in Ionita's mind and cannot be uncovered by requesting information from third parties.

Secondly, unlike in *$6,976,934.65*, summary judgment is not necessary to fill a void in the record where further information is required to determine the relationship between the fugitive and the claimant.  478 F. Supp. 2d at 38.  And, in contrast to *Salti*, summary judgment is not warranted to reconcile contradictory information contained in a declaration submitted by the claimant regarding his reasons for remaining abroad.  579 F.3d at 665.  Unlike the claimant in *Salti*, Ionita has not submitted declarations or other admissible evidence to contradict the government's claims that he has not reentered the United States in order to avoid criminal prosecution.  *Id*.

Here, the district court had sufficient information to determine that all elements of the Fugitive Disentitlement Statute had been satisfied and properly granted the government's motion to strike. We conclude that the district court did not err in denying Ionita's request to convert the government's motion into a motion for summary judgment.

VI

Lastly, we decline to address Ionita's remaining arguments regarding whether there was probable cause to search his vehicle, seize the defendant funds, or initiate criminal proceedings against him. Ionita cites to no authority suggesting that these arguments can be raised in a related civil proceeding while Ionita remains sheltered in a foreign country avoiding criminal process.

Ionita's arguments are barred by the Fugitive Disentitlement Statute, which prohibits him from litigating issues and obtaining favorable rulings related to his pending criminal case without subjecting himself to the jurisdiction of the Los Angeles County criminal court. The purpose of the Fugitive Disentitlement Statute is to bar precisely this sort of issue shopping by a fugitive claimant. *See $6,190.00*, 581 F.2d at 885 ("The fugitive disentitlement doctrine prohibits an individual from using the courts to further one claim while avoiding the courts' jurisdiction on another matter.").

Therefore, once a court determines that the Fugitive Disentitlement Statute applies, a claimant's further defenses to the underlying criminal matter are irrelevant. *See $6,976,934.65*, 486 F. Supp. 2d at 39 ("Section 2466 empowers a court of competent jurisdiction to disentitle a

fugitive, thus stripping him of any defenses he may have"). If Ionita believes that his arguments have merit, he can voluntarily terminate his fugitive status and surrender himself to the jurisdiction of the California courts to answer the criminal charge. Until that time, Ionita cannot, safely from afar, use civil forfeiture proceedings to chisel away at the related California criminal case pending against him.

## VII

Ionita may not use the court's resources to pursue a civil forfeiture claim while simultaneously evading jurisdiction to avoid sanction in a related, pending criminal case. As a fugitive from justice, Ionita "has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993) (quoting *Ali v. Sims*, 788 F.2d 954, 959 (3d Cir. 1986)). The district court correctly granted the government's motion to strike Ionita's answer and his claim to the defendant currency in conformance with 28 U.S.C. § 2466. Default judgment was properly entered thereafter.

**AFFIRMED.**