RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

$525,695.24, SEIZED FROM JPMORGAN CHASE BANK INVESTMENT ACCOUNT #74068415, et al.,

*Defendants,*

SBEIH A. SBEIH,

*Claimant-Appellant.*

No. 16-3209

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-01455—Donald C. Nugent, District Judge.

Argued: March 7, 2017

Decided and Filed: August 23, 2017

Before: CLAY, GIBBONS, and STRANCH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Joan E. Pettinelli, North Royalton, Ohio, for Appellant. Phillip J. Tripi, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Joan E. Pettinelli, North Royalton, Ohio, for Appellant. Phillip J. Tripi, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge. The United States filed a civil forfeiture complaint against numerous bank accounts, as well as three cars and various real properties, asserting that the named properties were either used in the transportation and sale of controlled substances, were used or intended to be used to facilitate drug trafficking, or were involved in money laundering. The government thus asserted that the properties were subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4), (a)(6), and (a)(7), as well as 18 U.S.C. § 981. Claimant Sbeih Sbeih filed a verified claim to seven of the bank accounts; however, the government moved to strike that claim based on the fugitive disentitlement statute, 28 U.S.C. § 2466. The district court granted the government's motion to strike Sbeih's claim and subsequently ordered the accounts forfeited. Sbeih now appeals the order of forfeiture and the decision by the district court striking his claim. For the reasons set forth below, we **VACATE** the district court's judgment and **REMAND** the action for further proceedings consistent with this opinion.

**BACKGROUND**

On June 3, 2013, the government filed a civil *in rem* forfeiture complaint against twenty bank accounts, two real properties, three vehicles, and $91,500 in United States currency. This civil forfeiture action is related to the government's investigation of Sbeih and Osama Salouha, a claimant in a related case. Salouha is alleged to have illegally sold prescription drugs, including oxycodone, oxymorphone, and hydrocodone, through the two pharmacies he owns in Ohio, in violation of 21 U.S.C. § 841. Sbeih was a joint owner in one of Salouha's pharmacies, and together Sbeih and Salouha are alleged to have laundered the receipts from Salouha's illegal drug sales through their personal and business accounts, in violation of 18 U.S.C. § 1956. The government sought forfeiture pursuant to 21 U.S.C. § 881(a)(4), (a)(6), and (a)(7), as well as 18 U.S.C. § 981, as the bank accounts contained proceeds from drug trafficking activities, were used to facilitate drug trafficking, or were involved in money laundering.

On August 7, 2013, Sbeih and his wife, Nimeh Ahmad-Sbeih, filed verified claims to seven of the personal bank accounts held in one or both of their names. The case was then stayed for a year because of the related criminal investigation. Sbeih was indicted on June 3, 2014, on one count of conspiracy to commit money laundering, one count of conspiracy to defraud the Internal Revenue Service, and three counts of making and subscribing false income tax returns. When Sbeih failed to appear for his arraignment on his criminal charges, the district court issued a warrant for his arrest.

Meanwhile, the district court lifted the stay on the civil forfeiture case and scheduled a status conference for June 24, 2014. Sbeih's counsel sought the district court's permission for Sbeih not to attend the conference in person, as he was in Israel. Sbeih alleged that he was in danger of losing his Jerusalem permanent residency permit if he left Israel. The district court granted the motion, excusing Sbeih.

On September 18, 2014, the government filed a motion to strike Sbeih's claim pursuant to the fugitive disentitlement statute. Sbeih opposed that motion. The district court did not immediately rule on the issue and instead waited to see whether the Salouhas, Sbeih's co-defendants in the criminal case, were able to reenter the country, as they were reportedly stuck in Gaza. On April 10, 2015, the government refiled its motion to strike Sbeih's claims pursuant to the fugitive disentitlement statute. After receiving a response from Sbeih, the district court granted the government's motion to strike Sbeih's claim on May 12, 2015. On January 14, 2016, the district court entered judgment against the relevant defendant properties, ordering them forfeited to the United States. This timely appeal followed.[1]

## DISCUSSION

On appeal, Sbeih challenges the district court's determination that he should be prevented from pursuing his interest in the defendant properties based on his status as a fugitive. We conclude that the district court clearly erred in finding that, based on the record as preserved

---

[1]The notice of appeal was timely because it was filed within 60 days of the district court's order ordering forfeiture of the defendant properties, as one of the parties was the United States. *See* Fed. R. App. P. 4(a)(1)(B)(i).

for appeal, Sbeih should be disentitled because he was evading criminal prosecution by not returning to the United States.

### A.    Jurisdiction

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides that "district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States." The district court also had jurisdiction pursuant to 28 U.S.C. § 1355, as this is an action for forfeiture. This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

### B.    Standard of Review

This Court reviews *de novo* whether 28 U.S.C. § 2466 is applicable to Sbeih's case, and "to the extent we conclude that the statute is applicable . . . , we review the district court's decision to order disentitlement for abuse of discretion." *United States v. Salti*, 579 F.3d 656, 662–63 (6th Cir. 2009) (alteration in original) (quoting *Collazos v. United States*, 368 F.3d 190, 195 (2d Cir. 2004)). We review the district court's factual findings, including the finding as to intent, for clear error. *United States v. Batato*, 833 F.3d 413, 431 (4th Cir. 2016) (citation omitted).

### C.    Analysis

The fugitive disentitlement statute, codified as 28 U.S.C. § 2466, states:

(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—

   (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—

      (A) purposely leaves the jurisdiction of the United States;

      (B) declines to enter or reenter the United States to submit to its jurisdiction; or

      (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

Based on the text of this statute, this Court has adopted the following five part test to determine whether disentitlement is appropriate:

(1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*Salti*, 579 F.3d at 663 (quoting *Collazos*, 368 F.3d at 198).

In this case, Sbeih only challenged the applicability of the fifth factor—whether he deliberately avoided prosecution by declining to reenter the United States. Sbeih argued that he is remaining in Israel not because he is trying to evade criminal prosecution, but because, if he leaves, he is unlikely to be able to retain his permanent resident status in Jerusalem. In support of his contention that he would not be allowed to retain his permanent residency status in Israel if he left, Sbeih included an affidavit from his lawyer in Israel, as well as an expert report from a professor who reviewed Sbeih's records from his Israeli court proceedings.

Applying the test set forth in *Salti*, the district court found that disentitlement was appropriate and granted the government's motion to strike Sbeih's claim to seven of the bank accounts listed in the forfeiture complaint. The district court first determined that the government did not need to prove that Sbeih's sole reason for staying outside the United States was to evade criminal prosecution. While Sbeih proffered another reason for staying in Israel—his fear of losing permanent resident status in Israel if he left the country—the district court determined that such fear "does not preclude a finding that [Sbeih] has made a conscious choice not to reenter the United States in order to avoid criminal prosecution." (R. 145, Mem. Op. & Order, PageID #1309.)

The district court then offered the following as its rationale for determining that the fifth factor was satisfied:

> Based on the totality of the circumstances, as related by Counsel during the numerous Status Conferences held in this case and briefed repeatedly by the Parties, the Court finds that Mr. Sbeih has made a conscious choice not to reenter the United States for the purpose of avoiding prosecution. Mr. Sbeih is not prohibited from leaving Israel; is not detained in Israel; and, has presented no evidence that he is somehow incapacitated or otherwise unable to travel. Mr. Sbeih's wife has returned to the United States and, although Mr. Sbeih argues he must stay in Jerusalem to care for his parents, Mr. Sbeih has indicated he has siblings who remain in Jerusalem. Prior to 2008, Mr. Sbeih traveled to Jerusalem only every two or three years and, in 2011, during the pendency of legal proceedings regarding his residency, Mr. Sbeih did in fact seek (through his attorney) and receive (from the Ministry of the Interior with the assistance of the United States Consulate) permission to travel to the United States for four months. However, he now chooses not to return to the United States in the face of the pending criminal case. Mr. Sbeih shall not [be] permitted to pursue a claim in this civil forfeiture action, while at the same time purposefully avoiding the criminal case pending against him.

(*Id.* at 1310 (internal citation omitted).) Sbeih now raises two relevant challenges to the district court's analysis on appeal. First, Sbeih argues that the district court incorrectly concluded that evading criminal prosecution did not have to be the sole purpose of remaining outside the United States. Second, Sbeih argues that the district court erred in concluding that the government had met its burden of showing that he stayed outside of the United States to avoid criminal prosecution.[2] Each of these arguments is addressed in turn below.

### 1.  Whether evading prosecution must be the sole reason for remaining outside the United States

Sbeih argues that the language of the fugitive disentitlement statute requires that the government prove that evading criminal prosecution is "at least the principal or dominant, if not the sole, reason for [his] decision to remain in Jerusalem." (Claimant's Br. at 25.) According to

---

[2]Because we have determined that the district court clearly erred in finding that Sbeih was remaining in Israel to avoid prosecution in the United States given the record before us, we need not reach Sbeih's additional argument that the district court abused its discretion in ordering forfeiture by not conducting a separate analysis to determine whether disentitlement was appropriate in light of the court's discretionary authority. We also need not consider Sbeih's argument that application of the fugitive disentitlement statute violates his Fifth Amendment due process rights.

Sbeih, the language in § 2466 stating that disentitlement is appropriate when a claimant refuses to reenter the United States "in order to avoid criminal prosecution" dictates that "the government must prove that avoiding prosecution was *the* reason the claimant has failed to return." (*Id.* at 27 (quoting 28 U.S.C. § 2466(a)(1)).) Sbeih further argues that "the potential existence of 'another reason' for failure to reenter is enough to reverse the application of the statute." (*Id.*) He also points to our decision in *Salti*, in which, according to his interpretation, we determined that "the existence of a legitimate reason for failure to return, such as the claimant's ill health, may preclude a finding . . . that the failure to reenter is 'in order to avoid prosecution.'" (*Id.* at 26 (citing *Salti*, 579 F.3d at 665).)

As an initial matter, we do not read *Salti* as requiring the government to prove that Sbeih had only one motive—avoiding prosecution—for staying in Israel. *Salti* involved a case where the claimant produced evidence that he was unable to travel from Jordan to the United States because of his poor health and recent open heart surgery. 579 F.3d at 665. The district court, however, only considered the claimant's health when deciding whether, in its discretion, disentitlement was appropriate. *Id.* Notably, the district court considered the claimant's poor health irrelevant to the question of whether he was "deliberately avoid[ing] prosecution by . . . declining to enter or reenter the United States." *Id.* (alterations in original) (quoting *Collazos*, 368 F.3d at 198). The *Salti* Court determined that the district court committed error by failing to consider the claimant's health because if the claimant was "indeed too sick to travel, such that his illness is what prevent[ed] him from returning to the United States, the Government has not shown as a matter of law that [the claimant's] being in Jordan, and not in the United States, is 'in order to avoid criminal prosecution.'" *Id.* at 665–66 (quoting 28 U.S.C. § 2466(a)(1)). In reaching that conclusion, the *Salti* Court relied on *Collazos*, in which the Second Circuit found that "disentitlement was appropriate when the individual in question 'made a *conscious choice* not to enter or reenter the United States to face the criminal charges pending against her,' and when 'nothing in the record indicate[d] that [the claimant] was ever confined, incarcerated, or otherwise *unable to travel* to the United States.'" *Id.* at 666 (emphasis in original) (quoting *Collazos*, 368 F.3d at 201).

The *Salti* Court did not consider whether any legitimate reason for staying outside the United States would defeat the fugitive disentitlement statute's requirement that failure to reenter the United States must be "in order to avoid criminal prosecution." 28 U.S.C. § 2466(a)(1). Instead, *Salti* addressed the situation where the government had not proven that the claimant was able to return to the United States in the first place but made the conscious choice not to return so that he could evade prosecution. The Court never stated that disentitlement was wrongly applied to the claimant because of his illness or that evidence of his illness was enough for the claimant to establish that he was not evading criminal prosecution by staying in Jordan. The *Salti* Court instead remanded the case for further factual development. Thus, *Salti* did not decide the question of whether the government must prove that Sbeih's principal or sole purpose in staying in Jerusalem was to evade prosecution.

Sbeih further contends that the D.C. Circuit, in *United States v. $6,976,934.65, Plus Interest Deposited into Royal Bank of Scotland International, Account Number 2029-56141070, Held in the Name of Soulbury Ltd.*, 554 F.3d 123 (D.C. Cir. 2009), adopted a test whereby the government must prove that evading prosecution is the sole reason for the claimant's refusal to return to the United States. The D.C. Circuit's opinion also does not address the question presented here. Contrary to Sbeih's argument, the court in that case faced a situation where the government failed to prove that the claimant's purpose in remaining outside the United States was to avoid prosecution. The government pointed to a television appearance of the claimant in which he acknowledged that "he would likely be arrested if he returned to the United States." *Id.* at 132. The court determined, however, that "the video also suggest[ed] that [the claimant] did not wish to reenter the United States regardless of any pending criminal charges." *Id.* Specifically, the court noted that "[t]he district court made no finding as to what, if anything, this comment reveals about [the claimant's] reasons for remaining outside the United States." *Id.* Given that the court was deciding the motion using a summary judgment standard, the court determined that the claimant's statement was "sufficient to raise a genuine issue of fact whether he declined to reenter the country in order to avoid criminal prosecution." *Id.*

As explained by the Fourth Circuit, the D.C. Circuit decided that the claimant's statement made on television "was insufficient to show *conclusively* that avoiding prosecution was even *a*

reason that the claimant remained outside the United States, and neither the district court nor the government had actually attempted to show intent, believing the requirement was met by showing mere 'notice or knowledge.'" *Batato*, 833 F.3d at 431 (citing *$6,976,934.65*, 554 F.3d at 132). The D.C. Circuit did not determine that the government must also establish that the claimant had the sole intent of avoiding prosecution. Thus, while the D.C. Circuit's opinion is instructive for determining the standard of proof the government must provide of the claimant's intent, it does not address whether a claimant can have multiple motives in remaining outside the United States, one of which is to evade prosecution, and still be subject to disentitlement.

We further note that three other circuit courts have determined that the government does not need to prove that the claimant had the principal or sole motive of avoiding prosecution for the disentitlement statute to apply. In *United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051 (9th Cir. 2013), the Ninth Circuit addressed a case where a claimant, who was not a citizen of the United States, argued that he "remain[ed] in Canada not to 'evade the [state] court's jurisdiction' but insist[ed] that he 'merely returned to his home.'" *Id.* at 1056 (second alteration in original). The court, however, noted:

> The existence of other factors that might have also motivated [the claimant] to remain abroad, such as his Canadian citizenship and residency, does not undermine or foreclose the district court's finding that [the claimant] made a conscious choice to not "enter or reenter the United States" in order to avoid criminal prosecution. 28 U.S.C. § 2466(a)(1)(B). [The claimant's] desire to evade criminal prosecution need not be the sole motivating factor causing him to remain abroad, to the exclusion of all others. All that is required is a finding that "after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution," [the claimant] "declines to enter or reenter the United States to submit to its jurisdiction." *Id.* There is sufficient evidence here to support that determination.

*$671,160.00 in U.S. Currency*, 730 F.3d at 1056 n.2.

The Second Circuit similarly held "that the government was required to prove that the [claimants] remained outside of the United States with the specific intent to avoid criminal prosecution." *United States v. Technodyne LLC*, 753 F.3d 368, 383 (2d Cir. 2014) (citation omitted). The court, however, rejected the claimants' "attempts to equate specific intent with sole, principal, or dominant intent." *Id.* The court went on to state that "[i]t is commonplace that

the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose." *Id.* at 385. The court further noted that other crimes, such as bribery, tax evasion, and conspiracy, generally require a specific intent, but that "a defendant accused of such a crime may properly be convicted if his intent to commit the crime was any of his objectives." *Id.* (citations omitted). The court also opined that, had Congress intended to require that the claimant's sole purpose in remaining outside the United States was to avoid prosecution, it would have stated so expressly. *Id.* However, the fugitive disentitlement statute does not contain such limiting language. *Id.* Finally, the court stated:

> As Congress sought to bar the "unseemly spectacle" of allowing an accused to absent himself deliberately in order to avoid prosecution in the United States while using United States courts to retrieve the proceeds of his crime, it would defy logic to infer that Congress *sub silentio* intended to allow the fugitive to create such an abomination by the simple expedient of claiming some additional reason for not returning.

*Id.* at 385–86 (internal citation omitted).

Most recently, the Fourth Circuit held in *United States v. Batato* that § 2466 has a specific intent requirement, but that it does not mandate that avoiding prosecution be the sole reason for a claimant's refusal to return to the United States. 833 F.3d at 429–31. The court noted that the text of the statute does not include any limiting language that would indicate that "Congress wanted to make § 2466 apply only where avoiding prosecution was the 'sole' or 'principal' reason for a person's absence from the United States." *Id.* at 430. The court also opined that "Congress clearly anticipated § 2466 would apply to individuals with no reason to come to the United States other than to defend against criminal charges." *Id.* With regard to those people, the court further stated:

> Because the statute must apply to people with no reason to come to the United States other than to face charges, a "sole" or "principal" purpose test cannot stand. The principal reason such a person remains outside the United States will typically be that they live elsewhere. A criminal indictment gives such a person a reason to make the journey, and the statute is aimed at those who resist nevertheless.

*Id.*

We join the Second, Fourth, and Ninth Circuits in holding that, while § 2466 requires the government to prove that the claimants had a specific intent of avoiding criminal prosecution in deciding to remain outside the United States, the statute does not require that that intent be the sole or principal intent.  As the other three circuits have noted, the text of the statute does not imply such a requirement.  Furthermore, Congress was certainly able to impose a more stringent intent requirement and knew how to do so, but chose not to in this instance.  Congress also intended for foreign nationals to be subject to § 2466, as it included both failing to enter and to reenter as ways of avoiding criminal prosecution.  28 U.S.C. § 2466(a)(1)(B).  Therefore, Congress contemplated that non-citizens who had not been to the United States but who nevertheless failed to come to the country after a criminal indictment would be subject to disentitlement.  These individuals likely have many reasons for not coming to the United States, only one of which may be to avoid criminal prosecution.  However, Congress still explicitly included them in the reach of § 2466.

Moreover, courts in the United States have repeatedly recognized that individuals can have multiple goals when committing various crimes; as long as one of those objectives was actually to commit the crime, the *mens rea* element is satisfied.  *See Technodyne LLC*, 753 F.3d at 385 (collecting cases).  We agree that the same principle applies here—as long as one of the goals in not coming to the United States is to evade prosecution, the specific intent requirement of § 2466 is satisfied.  We therefore hold that § 2466 does not provide that disentitlement is proper only when a claimant has the sole or principal purpose of evading prosecution in not returning to the United States.  Instead, disentitlement under § 2466 is appropriate whenever a claimant fails to enter or reenter the United States with the intention of avoiding prosecution, regardless of any additional purposes the claimant may have for remaining outside the United States.

> **2.      Whether the district court erred in concluding that the government met its burden of showing that Sbeih stayed outside of the United States to avoid criminal prosecution**

Sbeih next argues that the district court erred in granting the government's motion to strike his claim because the government did not meet its burden of showing that Sbeih had the intent of avoiding prosecution at all.  Sbeih contends that the government relied only on the fact

that he had notice of the criminal prosecution but failed to return to the United States. Sbeih therefore argues that the district court improperly shifted the burden onto him to prove that he was not trying to avoid prosecution, when the available evidence showed that he "intended to remain in Jerusalem unless and until he was able to travel without jeopardizing his Israeli permanent residency, *regardless* of the indictment." (Claimant's Br. at 32.)

The government, on appeal, argues only that Sbeih's plea negotiations support the contention that Sbeih was remaining in Israel to avoid prosecution. The government points to one section in its original motion to strike Sbeih's claim, which stated:

> [T]he criminal AUSAs assigned to the case were in regular contact with counsel for Sbeih, culminating in a meeting on April 29, 2014, at which the potential of a resolution of the case by plea agreement was discussed. It was clearly communicated to claimant's counsel that any resolution of the case would need to include a criminal conviction and that an indictment was forthcoming.

(Gov't Br. at 22 (alterations in original) (quoting R. 85, Gov't's Mot. to Strike Claims, PageID #644).) The government further stated, "[b]ased upon discussions with his former retained criminal defense counsel, it is inconsistent for Sbeih to suggest in his Appellate Brief that his exposure to potential criminal sanctions was not a concern to him in choosing to remain in Israel." (*Id.*) The government then opines that, from the plea negotiations and "from representations made by the parties during the status conferences the district court conducted, . . . the district court had a basis to infer that Sbeih's motive for not returning to the United States was, in part, due to the related criminal case." (*Id.*)

Importantly, the conversations on which the government relies are not available for us to review, as almost all status conferences held by the district court were conducted off the record. Thus, to the extent that the government and the district court reached an understanding about Sbeih's motives during these conferences, such determinations cannot be credited on appellate review. Moreover, we are left unable to determine whether and to what extent Sbeih refuted the government's allegations about the reasons behind his failure to return to the United States.

We find that the record in this case is insufficient to allow us to conclude that the government met its burden of proving that Sbeih was not returning to the United States in order to avoid prosecution. *See Salti*, 579 F.3d at 665–66 (holding that "the Government has not

shown as a matter of law that [the claimant's] being in Jordan, and not in the United States, is 'in order to avoid criminal prosecution.'" (citation omitted)); *see also Technodyne LLC*, 753 F.3d at 381 (holding that "where the government moves for disentitlement of a claimant, it bears the burden of establishing the factual prerequisites laid out in that statute").  We agree that the government cannot satisfy its burden by relying solely on the fact that Sbeih had notice of the warrant but failed to return to the United States.  Such a low burden reads out the specific intent requirement, incorporated in both the statute and the five factor test, that the claimant "*deliberately* avoided prosecution." *Salti*, 579 F.3d at 663 (emphasis added).  While the district court may consider notice and the failure to return as part of the "totality of the circumstances" that would indicate a specific intent to evade prosecution, notice and a failure to return cannot carry the entirety of the government's burden.  *See $6,976,934.65*, 554 F.3d at 132 (holding that "mere notice or knowledge of an outstanding warrant, coupled with a refusal to enter the United States, does not satisfy the statute").

After a thorough review of the record in this case, we can find nothing, beyond the mere fact that Sbeih had notice of the criminal proceeding but failed to return, that would support the district court's finding that Sbeih was deliberately remaining in Israel to avoid prosecution. Unlike in the Ninth Circuit's case, there is no significant pattern of travel between Israel and the United States that abruptly stopped after the criminal indictment.  *See $671,160.00 in U.S. Currency*, 730 F.3d 1057 (noting that the claimant's "self-enforced absence from the United States stands in marked contrast to his extensive travel to California prior to the issuance of the pending criminal charge").  While the government contends that Sbeih is able to return to the United States because he had done so previously, the government has not put forth any evidence to contradict Sbeih's statement that he moved to Israel in 2008 and has only returned once in 2011 with the explicit permission of the Israeli Ministry of the Interior.  Moreover, the record does not contain numerous inconsistent statements that would indicate that Sbeih was being misleading, thus entitling the district court to discount his statements.  *See Technodyne LLC*, 753 F.3d at 386–87.  While the government has asserted that plea negotiations were discussed, the government has not pointed to any specific statements made in those negotiations from which the district court could infer that Sbeih was trying to remain in Israel in order to have leverage in those plea negotiations.  *See id.* at 386.  We also note that, absent waiver, plea discussions are

usually not admissible as evidence in criminal or civil proceedings. *United States v. Mezzanatto*, 513 U.S. 196, 200 (1995) (citing Fed. R. Evid. 410 and Fed. R. Crim. P. 11(e)(6)).

Because of the sparsity of the district court's record, it is not clear that the government has satisfied its burden of showing that Sbeih was staying outside the United States in order to avoid prosecution. As noted previously, many of the relevant conversations between the attorneys and the district court were conducted off the record, and thus we have no way of knowing to what extent Sbeih refuted the government's allegations regarding his intent to evade criminal proceedings. Furthermore, we have no way to determine whether Sbeih has a justifiable reason for not returning to the United States, and would therefore be entitled to pursue his legal rights in this civil forfeiture matter while remaining in Israel, given that it is unclear what efforts the government made to counter Sbeih's allegations or even if such evidence would be available. We therefore conclude that, based on the record as it has been presented to this Court, the district court committed clear error in finding that the evidence was sufficient to establish that Sbeih had the specific intent of staying in Israel to avoid prosecution.

Consequently, we vacate the forfeiture order and remand the action to the district court for further consideration. In so doing, we express no opinion about whether disentitlement is appropriate in this case. Instead, remand is necessary so that both the government and Sbeih can present evidence regarding Sbeih's intent in refusing to return to the United States. This evidence should be presented in such a way that it is available for future appellate review. The district court is then instructed to make detailed factual findings regarding the strength of the evidence, the credibility of those providing the evidence, and the basis for determining whether Sbeih should be prevented from defending against civil forfeiture.

## CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** this action to the district court for further proceedings consistent with this opinion. Specifically, we instruct the district court to conduct further proceedings to develop a sufficient factual record regarding Sbeih's intent behind his refusal to return to the United States and to provide a detailed basis for its determination that disentitlement either is or is not appropriate.