# United States Court of Appeals
## For the First Circuit

No. 03-1748

UNITED STATES,

Appellee,

v.

$23,000 IN UNITED STATES CURRENCY,

Defendant,

RENÉ RODRÍGUEZ-BARRIENTOS,

Claimant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
and Oberdorfer,* Senior District Judge.

Anne W. Marsh, with whom John F. Cicilline was on brief, for appellant.
Isabel Muñoz-Acosta, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Miguel A. Fernández, Assistant United States Attorney, were on brief, for appellees.

January 23, 2004

_____

*Of the United States District Court for the District of Columbia, sitting by designation.

**LIPEZ**, <u>Circuit Judge</u>.  Claimant René Rodríguez-Barrientos ("Rodríguez") asserts ownership of $23,000 seized by the United States.  The district court entered a default judgment in favor of the United States, ruling that Rodríguez's claim was procedurally deficient, and denied Rodríguez's subsequent motion to vacate and motion to reconsider.  Rodríguez now appeals the denial of the motion to reconsider.  After carefully considering the procedural missteps in this case, some by Rodríguez and some by the court, we affirm.

## I.

On July 10, 2001, Rodríguez was scheduled to fly on a commercial airline from the John F. Kennedy International Airport ("JFK") in Queens, New York to Luis Munoz Marin International Airport ("LMMIA") in Carolina, Puerto Rico.  Suspecting that Rodríguez was carrying money to pay for a shipment of cocaine that had arrived at JFK from LMMIA on June 24, 2001, agents of the U.S. Drug Enforcement Agency detained Rodríguez at JFK while his flight proceeded on to Puerto Rico carrying his checked luggage.  The agents questioned Rodríguez and obtained his consent to search his luggage once it arrived at LMMIA.  Upon searching his luggage, DEA agents in Puerto Rico seized $23,000 in U.S. currency pursuant to 21 U.S.C. § 881(a)(6).

Subsequently, Rodríguez attempted to retrieve the seized currency.  The first step towards retrieving seized property is to

file a sworn claim of ownership with the agency that made the seizure--here the DEA. 18 U.S.C. § 983(a)(2)(A) (2003). This "verified administrative claim" notifies the agency of the party's alleged interest in the property. Rodríguez properly filed a verified administrative claim with the DEA on January 18, 2002, asserting that he was the owner of the $23,000 seized at LMMIA.

Once a party has filed an administrative claim, the government has 90 days either to file a complaint for forfeiture in the district court or to release the property. 18 U.S.C. § 983(a)(3)(A)-(B) (2003). In this case, the government filed a timely complaint for forfeiture on April 17, 2002, in the Puerto Rico district court and served a copy of the complaint on Rodríguez's counsel.[1] The government also published notice of the forfeiture in the May 8, 2002, edition of "El Nuevo Dia," a newspaper of general circulation in Puerto Rico authorized for notice purposes by Local Admiralty Rule G(3) of the Puerto Rico District Court.[2]

---

[1]Appellant claims that his counsel did not receive the complaint until May 24, 2002. Because the district court granted Rodríguez an extension of time to file his pleadings, and Rodríguez met this extended schedule, the date on which his counsel received the complaint is not relevant to determining Rodríguez's compliance with the filing requirements.

[2]Rule C(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims requires that, in a civil forfeiture proceeding, the government "must promptly--or within the time that the court allows--give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the

Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims governs pleading in a civil forfeiture proceeding. See, e.g., United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir. 1990). That rule, as it existed during the lower court proceedings in this case, requires that any person with a claim to the property must file a "verified statement identifying that interest or right" ("verified statement") within 20 days of actual notice or completed publication of notice, or within the time the court allows.[3] The claimant must then serve an answer to the complaint within 20 days of filing the verified statement.[4]

_____

district.... The notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer."

[3]In previous cases, such as United States v. One Urban Lot, 885 F.2d 994, 999 (1st Cir. 1989), we have referred to the "verified statement" as a "verified claim." The year 2000 Amendments to Rule C(6) changed the terminology from "claim" to "statement." The Advisory Committee notes explain that the change "permits parallel drafting, and facilitates cross references in other rules. The substantive nature of the statement remains the same as the former claim." Thus, despite the different terminology, the "verified statement" we refer to now is functionally identical to the "verified claim" we have referred to in the past when discussing the requirements of Rule C(6).

[4]When this case was first before the district court, prior to the amendments effective December 1, 2002, Rule C(6) stated that:

> (i) a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right:
>     (A) within 20 days after the earlier of (1) the actual notice of execution of process or (2) completed publication of notice under

-4-

Rodríguez requested an extension of time. On May 28, 2002, the district court granted him a 30-day extension to file his pleadings.

Rodríguez filed an answer on June 27, 2002, but he neglected to file the verified statement required by Rule C(6). On July 3, 2002, the government filed two motions: one to strike the answer because Rodríguez had never filed a verified statement, and one to enter a "Default Decree of Forfeiture." Copies of these motions were served on Rodríguez's counsel. Nevertheless, Rodríguez did not reply to either motion. On July 16, 2002, the district court granted the government's motion for a "Default Decree of Forfeiture," forfeiting the $23,000 to the government.

On July 22, 2002, appellant filed a motion to vacate the judgment by default. He attached a copy of his verified administrative claim and argued that, although it was originally

---

> Rule C(4), or
>     (B) within the time that the court allows.
> ...
> (iii) a person who files a statement of interest in or right against the property must serve an answer within 20 days after filing the statement.

The 2002 amendments, none of which affect the judgment in this case, allow 30 days to file a verified statement, change the first alternative event for measuring the 30 days to the government's service of the complaint, and allow 20 days to both serve and file an answer after the filing of the verified statement.

filed with the DEA and had not previously been before the court,[5] it was a sufficient substitute for the verified statement required by Rule C(6). He did not offer any explanation for the failure to file the verified statement required by the rules before filing his answer, and he did not ground his motion to vacate in any particular rule.

In a written order entered on January 28, 2003, the court rejected appellant's argument that filing a verified administrative claim fulfilled the pleading requirements of Rule C(6). The court cited precedent that filing a verified statement is required to establish standing in a civil forfeiture case. It also distinguished this case, in which the claimant filed an *unverified* answer, from the exception we adopted in United States v. One Urban Lot, where we held that a *verified* answer "can serve as both a [verified statement] and answer." 885 F.2d 994, 1000 (1st Cir. 1989). The court did not, however, specify the rule or standard of relief that it applied to the motion to vacate the default judgment.

---

[5]At oral argument, appellant claimed that the U.S. Attorney's office had forwarded the administrative claim to the district court. Appellee denied this, and we can find no evidence in the record that the U.S. Attorney forwarded the administrative claim to the district court. Rather, it appears that the court had the administrative claim before it for the first time when claimant filed a motion to vacate.

On February 3, appellant submitted a motion to reconsider the denial of the January 28 motion. Again he attached a copy of the verified administrative claim and again he argued that it fulfilled the verification requirement of Rule C(6). He did not invoke a particular rule when filing his motion. On February 5, the government filed an opposition to the motion.

On April 23, the court denied the motion to reconsider, which it characterized as a request for relief under Rule 60(b). After quoting Rule 60(b) in its entirety, but without citing any one of the six possible grounds for vacating a judgment under Rule 60(b), the court reiterated that the filing of a verified administrative claim and an unverified answer does not meet the requirements of Rule C(6) and is not sufficiently similar to the filing of a verified answer to invoke the exception we adopted in One Urban Lot. Rodríguez now appeals the district court's denial of the motion to reconsider.

## II.

### A. Default

The filing of a verified statement, as required by Rule C(6), is no mere procedural technicality. It forces claimants to assert their alleged ownership under oath, creating a deterrent against filing false claims. See, e.g., United States v. Commodity Account No. 549 54930, 219 F.3d 595, 597 (7th Cir. 2000)("Verification forces the claimant to place himself at risk

for perjury of false claims, and the requirement of oath or affirmation is not a mere technical requirement that we easily excuse."). For this reason, filing a verified statement is normally "a prerequisite to the right to file an answer and defend on the merits." One Dairy Farm, 918 F.2d at 311 (quoting United States v. Fourteen (14) Handguns, 524 F.Supp. 395, 397 (S.D. Tex. 1981)); see also One Urban Lot, 885 F.2d at 999 ("[S]ympathy alone does not suffice to require the district judge to disregard [claimants'] complete failure to abide by the command of Supp. Rule C(6) to file a verified claim or answer."). When a claimant files only an answer without a verified statement, the district court may strike the answer. See, e.g., United States v. Beechcraft Queen Airplane, 789 F.2d 627, 630 (8th Cir. 1986)(holding that "the District Court did not abuse its discretion by requiring strict compliance with Rule C(6) and striking [claimant's] answer because he did not precede it with a verified [statement].").

The failure to file a verified statement implicates Federal Rule of Civil Procedure 55, which governs the entry of a default judgment. See, e.g., One Urban Lot, 885 F.2d at 997 (applying Rule 55 to a civil forfeiture default). The rule distinguishes between the "entry of default" under Rule 55(a) and "judgment by default" under Rule 55(b). Entry of default is an interlocutory order--entered in anticipation of a final judgment-- formally recognizing that a party "has failed to plead or otherwise

defend as provided by [the Federal Rules of Civil Procedure]." Fed. R. Civ. P. 55(a). Because Rodríguez did not file a verified statement in accordance with Rule C(6), the court was entitled to enter a default under Rule 55(a) for failing to "otherwise defend" as required by the rules.

In contrast to the entry of default under Rule 55(a), a Rule 55(b) judgment by default is a "final disposition of the case and an appealable order" that has the same effect as a judgment rendered after a trial on the merits. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d, § 2684 (1998). Rule 55(b)(2) provides that the court may enter a judgment by default provided that "[i]f the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."

In this case, Rodríguez's filing of an answer constituted an appearance before the court. See 10A Wright, Miller & Kane, § 2686 (noting that an appearance merely "involves some presentation or submission to the court."). Thus, he was entitled to notice, under Rule 55(b)(2), of the application for a default judgment. The government provided notice of the motion for a default judgment by sending a copy to claimant's counsel via certified mail. Receiving no opposition to the motion to enter a default judgment,

the court proceeded, on July 16, 2002, to issue a "Default Decree of Forfeiture," which acted as a final judgment by default pursuant to Rule 55(b)(2).

## B. Motion to Vacate and Motion to Reconsider

Rule 55(c) applies different standards for setting aside an entry of default under Rule 55(a) and a judgment by default under Rule 55(b). A court may set aside an entry of default "for good cause." This standard is "a liberal one," Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989); the relevant factors are "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980). By contrast, the court can set aside a final judgment by default only "in accordance with Rule 60(b)." Rule 60(b)(1), the provision relevant here, requires a showing of "excusable neglect" to win relief from a final judgment.[6] This is a demanding

_____

[6]Rule 60(b) states in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the

-10-

standard.  See Coon, 867 F.2d at 76.  It allows the court, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 388 (1993).[7]  However, "ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect...."  Id. at 392.  We have said that, while other factors play an important role in the "excusable neglect" analysis, "the reason-for-delay factor will always be critical to the inquiry...."  Hospital Del Maestro v. Nat'l Labor Relations Bd., 263 F.3d 173, 175 (1st Cir. 2001)(quoting Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000)).  We have also recognized that

> judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b).

[7]Although the "excusable neglect" standard at issue in Pioneer arose under the bankruptcy code, the court's analysis applies to the "excusable neglect" standard as used throughout the Federal Rules of Civil Procedure, including Rule 60(b).  See, e.g., Graphic Communications Int'l Union Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir. 2001); Davila-Alvarez v. Escuela de Medicina Universidad Central de Caribe, 257 F.3d 58, 64 n.9 (1st Cir. 2001).

> a trial judge has wide discretion in dealing with a litigant whose predicament results from blatant ignorance of clear or easily ascertainable rules, and, if the trial judge decides that such neglect is not excusable in the particular case, we will not meddle unless we are persuaded that some exceptional justification exists.

Quebecor Printing, 270 F.3d at 6-7.[8]

In this case, Rodríguez filed two motions after the judgment by default: the motion to vacate and the motion to reconsider. Although the motion to vacate did not invoke Rule 60(b), and the district court did not explicitly rely on Rule 60(b) in its decision, the motion was nonetheless a Rule 60(b) motion because it sought to vacate a final judgment by default that, by the explicit terms of Rule 55(c), may be "set... aside in accordance with Rule 60(b)." Rodríguez's second motion--the motion to reconsider--essentially restated his claims from the motion to vacate, but this time the court explicitly analyzed the motion under Rule 60(b). In essence, the court allowed Rodríguez a second chance to argue his prior motion to vacate. For the purposes of this appeal, we accept the district court's analytical framework

---

[8]For cases finding excusable neglect, see 10A Wright, Miller & Kane, § 2695 (citing examples of "excusable neglect" including cases where the default was caused by lack of notice, illness, death, withdrawal of counsel, misunderstandings between multiple defendants, problems due to an out-of-state defendant and, in limited circumstances, honest mistake).

and will treat the motion to reconsider as a Rule 60(b) motion.[9]

We review the district court's denial of a Rule 60(b) motion for

abuse of discretion. See Cotto v. United States, 993 F.2d 274, 277

(1st Cir. 1993)("District courts enjoy considerable discretion in

deciding motions brought under Civil Rule 60(b). We review such

rulings only for abuse of that wide discretion.").

## III.

### A. Excusable Neglect

As stated above, the reason for delay is a critical

factor in the "excusable neglect" analysis.  At no stage in this

process, either in the trial court or here, has appellant explained

why, after being granted a 30-day extension by the district court

to respond to the government's forfeiture complaint, he did not

comply with Rule C(6), did not oppose the government's motion to

---

[9]We note that a motion "ask[ing] the court to modify its earlier disposition of the case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)." Appeal of Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987); see also 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2810.1 (1998) ("Rule 59(e)... include[s] motions for reconsideration.").  Thus, Rodríguez's motion to reconsider was, in essence, a Rule 59(e) motion which was filed within the required 10 days.  However, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures...." Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997).  Moreover, the motion to reconsider filed by Rodríguez merely restated the facts set out in the motion to vacate.  The repetition of previous arguments is not sufficient to prevail on a Rule 59(e) motion.  See FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992) ("Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence.").

strike his answer, and did not ask the court for leave to file a verified statement and new answer after the court entered its judgment by default. At each stage, appellant has instead argued that his filing of a verified administrative claim somehow negates the requirement to file a verified statement in the judicial forfeiture proceeding pursuant to Rule C(6), despite the absence of any precedent supporting that proposition.

We acknowledge that both the administrative claim and verified statement contain essentially the same information: they identify the property, the claim to the property, and bear a sworn statement by the claimant asserting his or her claim. 18 U.S.C. § 983(a)(2)(A) (2003); Fed. R. Civ. P., Supp. R. C(6). Nevertheless, the two documents serve distinct purposes: the administrative claim notifies the agency of the claim while the verified statement notifies the court. This distinction is important, inter alia, because the party that files an administrative claim may not be the only party with a claim against the property. More than one claimant may emerge to file a verified statement after public notice of the complaint for forfeiture. Filing a verified statement with the court notifies all other parties of each claim to the property so that all interests may properly be resolved. For this reason, the facial similarity between the two documents does not negate the obligation to file a verified statement. See, e.g., United States v. $2,857.00, 754 F.2d 208, 212 (7th Cir.

-14-

1985)("An administrative claim does not give the claimant any rights in the judicial condemnation proceeding; it only ensures that a judicial proceeding will take place before the property is forfeited.").

Appellant also makes a passing reference in his brief to the difficulty caused by his incarceration in Puerto Rico and the apparent language barrier between Rodríguez and his counsel. Nevertheless, appellant did not present this argument in his motion to vacate and does not explain why these difficulties, which did not prevent him from filing a timely verified administrative claim, prevented him from filing a verified statement. Under the circumstances, we can find no abuse of discretion in the district court's refusal to vacate the default judgment pursuant to Rule 60(b) on the basis of excusable neglect.

**B. Good Cause**

Finally, Rodríguez attempts to avoid the "excusable neglect" analysis by arguing that his submission of a verified administrative claim to the court in conjunction with his motion to vacate invoked the Rule 55(c) "good cause" standard of review. He argues that the district court erred as a matter of law in applying the Rule 60(b) standard because appellant's procedural deficiency (failure to file a verified statement) only justified an entry of default rather than a judgment by default. If the court could only

enter a default under Rule 55(a), the more lenient Rule 55(c) "good cause" standard should have applied to the request for relief.

Appellant analogizes his case to that of the claimant in One Urban Lot, whose pleadings were sufficient to present a valid claim to the property even absent the filing of a verified statement. In One Urban Lot, we found no abuse of discretion where the district court entered a default judgment against three claimants who did not file a verified statement. However, in the case of one claimant who filed a *verified* answer, we held that such an answer submitted *prior to* judgment by default, if it includes all of the material normally contained in a verified statement, "can serve as both a [verified statement] and answer." 885 F.2d at 1000. Hence the district court should not have stricken that answer. Furthermore, with the verified answer still in place, the district court in One Urban Lot should not have elevated the entry of default to a judgment by default under Rule 55(b), susceptible to relief only under Rule 60(b). Instead, the district court should have applied the more lenient Rule 55(c) "good cause" standard and set aside the entry of default on that basis.[10]

_____

[10]The court in One Urban Lot also wrote that "since we have determined that the substance of a valid claim was before the court in the form of a verified answer, there was no default. There being no default, a default judgment could not be entered. Thus we need not analyze the elements of 'good cause'...." 885 F.2d at 1001. Arguably, this statement is inconsistent with the court's earlier assertion that it was applying the "good cause" standard of Rule 55(c). However, we read the court to be saying that it did

Appellant now invites us to extend the exception of One Urban Lot and apply the Rule 55(c) "good cause" standard to parties who provide only an *unverified* answer prior to default, and a sworn claim of interest only *after* the court has entered a judgment by default. We decline the invitation.

Even assuming that the administrative claim would be a valid substitute for a verified statement,[11] we cannot fault the district court, in the exercise of its discretion, for refusing to vacate a default judgment upon presentation of a verified document that should have been filed prior to default. The timely filing of a verified statement "force[s] claimants to come forward as soon as possible after forfeiture proceedings have begun...." One Urban Lot, 885 F.2d at 1001. Allowing claimants to rely on a verified administrative claim filed after the court has entered a default judgment would undermine this important goal of timeliness and an important related value--the finality of judgments. See, e.g., Custis v. United States, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the

---

not have to analyze discretely the elements of good cause (willfulness, prejudice, a meritorious defense) because the filing of a verified answer so clearly constituted "good cause" to set aside the entry of default.

[11]We express no opinion on whether a verified administrative claim, filed prior to default, would be an adequate replacement for a verified statement in accordance with Rule C(6).

orderly administration of justice."). Moreover, we take judicial notice of the fact that the Puerto Rico District Court is an exceptionally busy court, where the pressures for timely proceedings are relentless.[12] The requirement that a verified statement be filed before the filing of an answer was clearly set forth in Rule C(6), and there was nothing difficult about the compliance with this requirement. The district court was entitled to insist upon procedural regularity.

In reaching this conclusion, we have considered several procedural irregularities in this case that, in some circumstances, might justify applying the Rule 55(c) "good cause" standard rather than the Rule 60(b) "excusable neglect" standard. First, while the local rules of the Puerto Rico district court require a party to respond to motions within ten days, the district court waited only eight computable days after the government filed its motions before entering its default decree.[13] Second, instead of ruling separately

---

[12]In the five year period from 1998 until 2002, the Puerto Rico district courts saw 2121 cases filed per judgeship. This number is the highest in the First Circuit and 34% greater than that of the District of Massachusetts, the second-busiest district in cases per judgeship. United States Courts for the First Circuit 2002 Annual Report, August 2003, at 89-122, available at http://www.ca1.uscourts.gov/circuitexec/2002annualrpt.pdf.

[13]Puerto Rico District Court Local Rule 7(b) (formerly Rule 311.5) provides that a party must respond to a motion within ten days of its service or be deemed to have waived objection. Pursuant to Fed. R. Civ. P. 6(a), the day of filing is not included in calculating time, and "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and

on the motion to strike the answer, the court treated the answer as stricken in its default decree.[14] Finally, the district court did not explicitly enter a default pursuant to Rule 55(a) prior to entering a default judgment under Rule 55(b).[15]

On the facts of this case, however, these procedural irregularities do not warrant 55(c) "good cause" review. Appellant

---

legal holidays shall be excluded in the computation." The government filed its motion on Wednesday, July 3, 2002. Excluding intermediate weekends and the July 4 holiday, only eight days of the ten day period had expired when the district court entered the default judgment on July 16, 2002.

[14]The record indicates no disposition of the motion to strike. However, in denying Rodríguez's motion to vacate, the district court wrote that, when it had issued its default judgment, "no claims had been filed to the verified complaint.... [A]lthough an answer was filed, it was insufficient to be considered a claim." Thus, the district court treated the record before it as if it had stricken the answer.

[15]"Prior to obtaining a default judgment under [Rule 55(b)], there must be an entry of default as provided by Rule 55(a)." 10A Wright, Miller & Kane, § 2682. Thus, if the court had strictly adhered to the rules in this case, the court should have allowed ten days, pursuant to Local Rule 7(b), before ruling on the motion to strike the answer. After striking the answer, the court was entitled to enter a default pursuant to Rule 55(a) because, since Rodríguez's answer had been stricken, he had no pleading before the court. However, as previously stated, Rodríguez's deficient pleading was enough to constitute an appearance. Therefore, the court should have given him at least three days notice pursuant to Rule 55(b)(2) prior to entry of a default judgment. Fed. R. Civ. P. 55 ("If the party against whom judgment by default is sought has appeared in the action, the party ... shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."); see also 10A Wright, Miller & Kane, § 2687 ("Under Rule 55(b)(2), a party ... who has appeared in an action but has failed to defend must be given written notice of an application to the court for entry of a judgment by default.").

has not argued, before either the district court or on appeal, that any of these missteps require application of the "good cause" standard or that they prejudiced his case. Thus, these arguments are waived. See, e.g., Smilow v. Southwestern Bell Mobile Sys., 323 F.3d 32, 43 (1st Cir. 2003)("Issues raised on appeal in a perfunctory manner (or not at all) are waived."). Further, we have no reason to believe that these missteps by the court denied Rodríguez a fair review of his claim. Each occurred after the time for filing a verified statement had expired, including a 30-day extension granted by the court. We see no evidence that Rodríguez would have remedied his procedural deficiency if the court had waited the full ten days before entering a default judgment instead of eight, or if the court had first entered a default before entering a default judgment. Nothing in the history of the case barred the court from striking the answer explicitly and separately if it had chosen to do so. Finally, the court gave careful consideration on two occasions to Rodríguez's request for 60(b) relief.

**IV.**

Rodríguez filed deficient pleadings, failed to remedy those pleadings, and failed to explain his procedural missteps. While we "recognize the desirability of deciding disputes on their merits," Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992), we

cannot say that the district court abused its discretion by embracing the countervailing goals of timeliness and the finality of judgments. Our ruling is in accord with other Courts of Appeals that have similarly found no abuse of discretion when a district court requires claimants to comply strictly with the verified statement requirement of Rule C(6). See, e.g., Beechcraft Queen Airplane, 789 F.2d at 630; United States v. $2,857, 754 F.2d 208 (7th Cir. 1985); United States v. One 1978 Piper Navajo PA-31 Aircraft, 748 F.2d 316 (5th Cir. 1984).

**AFFIRMED.**