RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 16-3542

$525,695.24, SEIZED FROM JPMORGAN CHASE BANK
INVESTMENT ACCOUNT #74068415, et al.,

*Defendants,*

OSAMA H. SALOUHA; HYS HEALTH MART, INC.,

*Claimants-Appellants.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-01455—Donald C. Nugent, District Judge.

Argued: March 7, 2017

Decided and Filed: August 23, 2017

Before: CLAY, GIBBONS, and STRANCH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Edmund W. Searby, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellants. Phillip J. Tripi, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Edmund W. Searby, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellants. Phillip J. Tripi, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

CLAY, Circuit Judge.  In this civil forfeiture action, the United States filed a complaint against numerous bank accounts, as well as three cars and various real properties, asserting that the named properties were either used in the transportation and sale of controlled substances, were used or intended to be used to facilitate drug trafficking, or were involved in money laundering.  The government thus asserted that the properties were subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4), (a)(6), and (a)(7), as well as 18 U.S.C. § 981.  Claimant Osama Salouha, on behalf of himself and his business, HYS Health Mart, Inc. (collectively "Claimants"), filed a verified claim to eighteen of the assets; however, the government moved to strike that claim based on the fugitive disentitlement statute, 28 U.S.C. § 2466.  The district court granted the government's motion to strike Claimants' claim and subsequently ordered the relevant accounts forfeited.  Claimants now appeal the order of forfeiture, the decision by the district court striking their claims, and the denial of their motion for reconsideration.  The government filed a motion to dismiss the appeal based on an untimely notice of appeal.  For the reasons set forth below, we **DENY** the motion to dismiss the appeal and **AFFIRM** the district court's judgment.

**BACKGROUND**

On June 3, 2013, the government filed a civil *in rem* forfeiture complaint against twenty bank accounts, two real properties, three vehicles, and $91,500 in United States currency. This civil forfeiture action is related to the government's investigation into Osama Salouha and Sbeih Sbeih, the claimant in a related case.  Salouha is alleged to have illegally sold prescription drugs, including oxycodone, oxymorphone, and hydrocodone, through the two pharmacies he owns in Ohio, in violation of 21 U.S.C. § 841.  Salouha and Sbeih are alleged to have laundered the receipts from Salouha's illegal drug sales through their personal and business accounts, in violation of 18 U.S.C. § 1956.  The government sought forfeiture pursuant to 21 U.S.C. § 881(a)(4), (a)(6), and (a)(7), as well as 18 U.S.C. § 981, as the bank accounts contained

proceeds from drug trafficking activities, were used to facilitate drug trafficking, or were involved in money laundering.

On August 7, 2013, Salouha filed a verified claim to eighteen of the assets. Salouha also filed a verified claim asserting an interest in two of the bank accounts on behalf of his pharmacy, HYS Health Mart, Inc. The case was then stayed for a year because of the related criminal investigation. Salouha was indicted on June 3, 2014, on forty-eight counts of, *inter alia*, conspiracy to distribute controlled substances, distribution of controlled substances, false statements, conspiracy to commit money laundering, conspiracy to defraud the Internal Revenue Service, making and subscribing false income tax returns, and structuring transactions to evade reporting requirements.[1] When Salouha failed to appear for his arraignment on his criminal charges, the district court issued a warrant for his arrest.

Meanwhile, the district court lifted the stay on the civil forfeiture case and scheduled a status conference for June 24, 2014. Claimants' counsel sought the district court's permission for Salouha to attend the conference via telephone, as Salouha, along with his pregnant wife and four children, had moved to Gaza after the seizure of the family's assets. Salouha alleged that the travel restrictions imposed on the Gaza strip made it difficult for him and his wife to return. The district court denied the motion, and Salouha did not attend the conference.

On September 18, 2014, the government filed a motion to strike Claimants' claims pursuant to the fugitive disentitlement statute, which Claimants opposed. The district court did not immediately rule on the motion. Instead, the district court waited to see whether the Salouhas were able to re-enter the country with the help of the U.S. State Department. On March 24, 2015, the government refiled its motion to strike Claimants' claims pursuant to the fugitive disentitlement statute, asserting that Salouha was now out of Gaza and free to return to the United States, but had still failed to do so. Although Claimants requested until April 23, 2015, to file a response, Claimants ultimately decided not to respond to the motion. The district court granted the government's motion to strike Claimants' claims on May 12, 2015. The

---

[1]Salouha's wife, Samah Salouha, and Sbeih were indicted at the same time.

accompanying judgment only indicated that Claimants' claims were stricken; it did not order the forfeiture of any property.

Seven months later, on December 17, 2015, the government filed a Stipulated Settlement Agreement and Decree of Forfeiture, asserting that the government had reached a settlement with Salouha's wife, Samah Salouha, whereby Mrs. Salouha withdrew her claims to all the assets except the house and the car, in exchange for the government's dismissal of those assets from the complaint. The filing included a section ordering the forfeiture of the other sixteen assets. The district court signed and approved the order. The final properties involved in the case, which had been claimed by the Sbeihs, were ordered forfeited the following month, on January 14, 2016.

On April 1, 2016, Claimants moved to vacate the judgment and to have their property returned or, in the alternative, to clarify the judgment entered on May 12, 2015. The government moved to strike the motion. The district court, on May 12, 2016, denied Claimants' motion insofar as it sought reconsideration of Salouha's status as a disentitled fugitive, and struck the motion insofar as it sought reconsideration of the court's forfeiture order. Claimants filed an appeal the next day, which challenged the original disentitlement order and accompanying judgment, the signed order of forfeiture, and the denial of the motion to vacate the judgment.

## DISCUSSION

On appeal, Claimants argue that the district court erred in finding that Salouha was a fugitive, meaning he was improperly prevented from defending against the civil forfeiture. Claimants also argue that the district court erred in ordering forfeiture given that the government never filed a motion for default judgment with respect to the relevant properties.[2] In addition to arguing the merits of the arguments raised, the government filed a motion to dismiss the appeal,

---

[2]Claimants also argue that the order of forfeiture violated their Fifth, Sixth, and Eighth Amendment rights. However, these arguments have been waived, as they were only raised before the district court in Claimants' motion to vacate the order of forfeiture, which is in essence a motion for reconsideration. *See Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 595 (6th Cir. 2006); *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 165 (1st Cir. 2004). Generally, we do not consider arguments raised for the first time in a motion for reconsideration, *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citations omitted); *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984), and we decline to do so here.

contending that we lack jurisdiction because Claimants' notice of appeal was untimely.  We address each of these issues below, beginning with the jurisdictional question.

**A.        Jurisdiction**

"It is well-established that the federal courts are under an independent obligation to examine their own jurisdiction." *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 359 (6th Cir. 2006) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  This Court "review[s] de novo the existence of subject-matter jurisdiction." *Watson v. Cartee*, 817 F.3d 299, 302 (6th Cir. 2016) (citing *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003)).

The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides that "district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States."  The district court also had jurisdiction pursuant to 28 U.S.C. § 1355, as this is an action for forfeiture.

Claimants are permitted to file an appeal as of right pursuant to 28 U.S.C. § 1291, and such an appeal "'may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4' of the Federal Rules of Appellate Procedure." *Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009) (quoting Fed. R. App. P. 3(a)(1)).  When one of the parties in a civil case is the United States, "the notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed." Fed. R. App. P. 4(a)(1)(B).  But such an appeal may only be taken from final decisions of a district court. *Bonner*, 564 F.3d at 426–27.  "A judgment is final for purposes of appeal when it terminates all issues presented in the litigation on the merits and leaves nothing to be done except to enforce by execution what has been determined." *Donovan v. Hayden, Stone, Inc.*, 434 F.2d 619, 620 (6th Cir. 1970) (citations omitted).  However, an order that "does not dispose of all parties and all claims is generally not immediately appealable unless the district court issues" a certificate under Federal Rule of Civil Procedure 54(b). *Bonner*, 564 F.3d at 427.

The government originally raised the issue of this Court's jurisdiction to hear the appeal in a motion to dismiss the appeal as untimely.  In both the motion to dismiss and in the merits brief, the government argues that Claimants' notice of appeal was untimely as to the original

opinion and order striking Claimants' claims based on Salouha's status as a fugitive, the accompanying judgment, and the district court's order approving the forfeiture of the assets claimed by Claimants. As the government notes, the district court originally struck Claimants' claims on May 12, 2015. A separate judgment was entered the same day. Furthermore, the Decree of Forfeiture, as signed by the district court, was filed on December 17, 2015. Claimants did not file their notice of appeal until after the district court denied their motion to vacate the forfeiture, which the district court decided on May 12, 2016. Therefore, the government argues that the notice of appeal was timely only as to the district court's denial of Claimants' motion to vacate, as the sixty-day window for filing a notice of appeal as to the other two orders had already expired.

As stated above, an order is only final, and therefore appealable, when all the claims as to all parties have been resolved. *Bonner*, 564 F.3d at 427. The final order entered by the district court, which ordered the assets initially claimed by Sbeih Sbeih forfeited, was not entered until January 14, 2016. Therefore, we would generally calculate the time to appeal all the orders in this case from that date in the absence of a certification under Rule 54(b). Claimants argue that this order, however, did not start the clock for the time to appeal, as it does not comport with the final judgment rule of Federal Rule of Civil Procedure 58, which requires:

> Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:
> > (1) for judgment under Rule 50(b);
> > (2) to amend or make additional findings under Rule 52(b);
> > (3) for attorney's fees under Rule 54;
> > (4) for a new trial, or to alter or amend the judgment, under Rule 59; or
> > (5) for relief under Rule 60.

Fed. R. Civ. P. 58(a). When a separate judgment is required but is not entered, judgment is deemed entered either when a separate judgment is, in fact, issued, or 150 days after the order was filed on the docket, whichever occurs first. *Id.* at 58(c)(2); Fed. R. App. P. 4(a)(7)(A); *see also Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013). The final judgment rule was specifically enacted to help "avoid new uncertainties as to the date on which a judgment is entered," and thus, when the time for an appeal begins to run. *United States v. Indrelunas*,

411 U.S. 216, 221–22 (1973), *rev'd in part on other grounds*, *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 386 (1978).

An order of forfeiture is generally an order that would require a separate judgment, as it is does not fall into any of the five exceptions enumerated in Rule 58(a).  The question remains, however, whether the district court's order in this case qualified as a separate judgment.  Claimants note that the order here was a "settlement agreement between two parties replete with provisions not found in a judgment of a court but with a signature line for the district court's approval." (App. R. 11, Claimant's Resp. to Mot. to Dismiss, at 15.)  The government, in contrast, argues that the decree of forfeiture "succinctly and mechanically listed the assets to be forfeited" and did not include any additional explanation.  (App. R. 12, Gov't Reply, at 2.)

We agree that the January 14, 2016 order was not sufficiently self-contained to qualify as a separate judgment.  First, the title of the document did not indicate that it was meant to function as a separate judgment, as the government called it a "Stipulated Settlement Agreement and Decree of Forfeiture." (R. 160, Stip. Settlement Agreement & Decree of Forfeiture, PageID #1371.)  Furthermore, numerous provisions were included in the relevant order, including the settlement terms between the government and Mrs. Sbeih.  Such terms included the agreement of Mrs. Sbeih not to commence any actions asserting a claim against the relevant assets, as well as her waiver of any claims, including constitutional claims and claims for attorney fees, that might arise from the forfeiture action.  Indeed, the section that addresses what typically would be in a judgment does not begin until the bottom of the fourth page.  Therefore, we conclude that the combined settlement agreement and decree of forfeiture issued by the district court does not qualify as a separate judgment.  Because there was no separate judgment, the time to appeal the order did not begin to run until 150 days after the order was filed.  Fed. R. Civ. P. 58(c)(2); Fed. R. App. P. 4(a)(7)(A).  Claimants then had sixty days to file a notice of appeal, meaning a notice of appeal would be untimely only if 210 days elapsed without such a filing.  Fed. R. App. P. 4(a)(1)(B).

In this case, the final decree of forfeiture was entered on January 14, 2016, but no separate judgment was filed.  Claimants filed their notice of appeal on May 13, 2016.  Therefore, Claimants actually filed their notice of appeal early, as the 150 day period for the judgment to

become final had not yet elapsed.  However, such an early filing is of no consequence, as Federal Rule of Appellate Procedure 4(a)(2) explains that "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." *See also FirsTier Mortg. Co. v. Inv'rs Mortg. Ins. Co.*, 498 U.S. 269, 272–73 (1991).  We hold that the notice of appeal was timely filed, and consequently we deny the government's motion to dismiss the appeal.

### B.      Application of the Fugitive Disentitlement Statute

#### 1.      Standard of Review

This Court reviews *de novo* whether 28 U.S.C. § 2466 is applicable to Claimant's case, and "to the extent we conclude that the statute is applicable . . . , we review the district court's decision to order disentitlement for abuse of discretion."  *United States v. Salti*, 579 F.3d 656, 662–63 (6th Cir. 2009) (alteration in original) (quoting *Collazos v. United States*, 368 F.3d 190, 195 (2d Cir. 2004)).  We review the district court's factual findings, including the finding as to intent, for clear error.  *United States v. Batato*, 833 F.3d 413, 431 (4th Cir. 2016) (citation omitted).

#### 2.      Analysis

The fugitive disentitlement statute, codified as 28 U.S.C. § 2466, states:

(a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person—

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution—

(A) purposely leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

(C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and

(2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

Based on the text of this statute, this Court has adopted the following five part test to determine whether disentitlement is appropriate:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States, (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*Salti*, 579 F.3d at 663 (quoting *Collazos*, 368 F.3d at 198).

In this case, as in the related case of Sbeih (Docket No. 16-3209), Claimants only challenged the applicability of the fifth factor—whether Salouha deliberately avoided prosecution by declining to reenter the United States. Claimants argued that Salouha did not return to the United States because he was unable to leave Gaza due to the travel restrictions imposed by Egypt and Israel on Gaza residents. In support of his assertion, Claimants attached letters and emails from the U.S. Consulate in Jerusalem and the Palestinian Authority explaining that Salouha and his family were unable to leave Gaza. Later, Claimants submitted an additional letter from the Palestinian Authority stating that the crossing between Gaza and Egypt was closed indefinitely.

In a status conference, the government indicated that the U.S. State Department may be able to help the Salouhas leave Gaza. In fact, in its second motion to strike Claimants' claims, the government stated the following:

> On December 2, 2014, the United States received information from the Department of State that the Consulate would be assisting Americans out of Gaza sometime in the next few weeks and requested the names of each of the Salouha family members so that they could be placed on a list provided to the various authorities in the area. The United States provided a direct contact number and an email address for Osama Salouha so that the Department of State could speak with him directly. On December 10, 2014, the State Department representative notified that they had spoken directly with Osama Salouha, who had not answered the representative's previous emails. At that time, Salouha was, according to the Department of State, "noncommittal" about coming out of Gaza with the aforementioned group. Again, the Department of State indicated that removal

would occur within the next several weeks. On December 19, 2014, the Department of State notified the United States that the "group" would be divided into two groups and that the Salouha family was placed in the second group. The first group moved out of Gaza on December 18, 2014 and indications at that time were that the second group would not be able to move out of Gaza until sometime in January, 2015 due to the holidays. At that time it was stated that the Israeli government required the Department of State to take the groups to Amman, near the Jordanian border. On February 10, 2015, the Department of State notified the Salouhas they had been approved as members of the group to leave Gaza. Finally, on February 24, 2015, the Department of State notified the United States that all seven Salouha family members were taken by bus to Amman, Jordan. On February 27, 2015, the Department of State advised that it was holding the passports of the family members until it was provided with the Salouha's itinerary to return to the United States. On March 1, 2015, the Department of State received the itinerary for all seven members of the Salouha family including Osama Salouha. The family's U.S. passports were returned to them by the Department of State. After Samah Salouha returned to the United States on March 3, 2015 with her five children, the United States attempted to locate Osama Salouha. On March 5, 2015, the Department of State received information from the Jordanian government that Osama Salouha departed Jordan on March 3, 2015, en route to Egypt and that he had traveled on his Palestinian passport.

(R. 121, Gov't's Mot. to Strike Claims as to Osama Salouha and HYS Health Mart, Inc., PageID #1108–09.) Claimants did not attempt to refute these assertions.

As in the accompanying case involving Sbeih, the district court granted the government's motion to strike Claimants' claim after rejecting the argument that the government had to prove that Salouha's sole reason for staying outside the United States was to evade criminal prosecution. The district court then offered the following as its rationale for determining that the fifth factor was satisfied:

> Mr. Salouha and Health Mart argue that although the Salouhas traveled to Gaza after the search warrants were executed, there were no pending charges against them at that time, the forfeiture complaint had not been filed[,] and[] they still had their passports. The Salouhas argue that they purchased a round-trip ticket to Jordan, demonstrating their intent to return, but that Mr. Salouha's father was in poor health; Mrs. Salouha was about to deliver a baby; and, ongoing violence and the inability to obtain permission from the Palestinian Authority to leave, left them with no other option but to remain in Gaza. As stated above, the issues regarding the inability to leave Gaza . . . have since been resolved and the entire Salouha family left Gaza. While Mrs. Salouha ultimately returned to the United

States alone with all five children, Mr. Salouha traveled to Egypt and has not returned.

　　　Based on the totality of the circumstances, as related by Counsel during the numerous status conferences held in this case, briefed repeatedly by the Parties, and set forth above, the Court finds that Mr. Salouha has made a conscious choice not to reenter the United States for the purpose of avoiding prosecution.

(R. 143, Mem. Op. & Order, PageID #1301–02 (internal citations omitted).)

Claimants now raise two challenges to the district court's analysis on appeal. First, Claimants make the same argument as Sbeih that evading criminal prosecution had to be the sole purpose of remaining outside the United States. For the reasons already stated in our opinion involving Sbeih's claims, we reject that argument and hold that "disentitlement under § 2466 is appropriate whenever a claimant fails to enter or reenter the United States with the intention of avoiding prosecution, regardless of any additional purposes the claimant may have for remaining outside the United States." *United States v. $525,695.24 Seized from JPMorgan Chase Bank Inv. Acct #74069415*, No. 16-3209, slip op. at 11 (6th Cir.).

Second, Claimants argue that the district court erred in concluding that the government had met its burden of showing that Salouha stayed outside the United States to avoid criminal prosecution, given that the government relied only on unsworn representations by counsel. Thus, according to Claimants, there were disputed issues of fact as to whether Salouha was avoiding prosecution.

We disagree. While the government did not submit any affidavits or exhibits,[3] it did represent to the district court that Salouha had been able to leave Gaza with the aid of the U.S.

---

[3]At least one of our sister circuits has held that summary judgment is an inappropriate standard to invoke in the context of the fugitive disentitlement statute. *See U.S. v. Technodyne*, 753 F.3d 368, 381–82 (2d Cir. 2014). In support of that holding, the Second Circuit relied upon the fact that the term "summary judgment" is not mentioned in the statute, in contrast to its inclusion in the Supplemental Rules. *Id.* at 381. In addition, when deciding a summary judgment motion, a judge is prohibited from weighing facts and instead must only determine whether there is a genuine dispute over material facts. *Id.* (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986) (additional citation omitted). "In contrast, the fugitive disentitlement statute provides that the 'judicial officer' may disallow a person or entity from using the resources of the federal courts 'upon a finding' that the factual prerequisites to disentitlement set out in that section are met." *Id.* (quoting 28 U.S.C. § 2466(a)). Therefore, the court held that, "[s]ince the judge is explicitly required to make findings of fact, determinations as to disentitlement are not to be made under the standards governing summary judgment." *Id.* at 381–82. In the context of its

State Department, but that he failed to return to the United States and instead went to Egypt on his Palestinian passport.  Claimants chose not to refute any of these statements, as they did not file a response, despite explicit authorization from the district court to do so.  Furthermore, at oral argument, Claimants' counsel was unable or unwilling to answer our direct question asking where Salouha was currently located.  Given these unique circumstances, Claimants cannot credibly argue that there were disputed facts about Salouha's ability to return to the United States to face prosecution.  Moreover, the fact that Claimants had previously submitted documentation purporting to show that Salouha was stuck in Gaza and unable to return to the United States is irrelevant in light of the government's uncontested representations that the entire Salouha family was no longer in Gaza.  Furthermore, Mrs. Salouha did, in fact, return to the United States with her five children, despite the fact that she, too, was indicted in the same case as her husband and was under the same restrictions in Gaza.  We therefore hold that the district court did not commit clear error in crediting the uncontested statements of the government, as well as relying on the knowledge of Mrs. Salouha's return, to conclude that Salouha was deliberately staying outside the jurisdiction of the United States in order to avoid prosecution.  Consequently, we affirm the district court insofar as it decided that Claimants should be disentitled under § 2466 based on Salouha's status as a fugitive.

## C.    Order of Forfeiture

### 1.    Standard of Review

This Court "treat[s] the district court's interpretation and application of the Federal Rules of Civil Procedure as a question of law and, as with all legal questions, review[s] this analysis de novo." *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 510 (6th Cir. 2001).

### 2.    Analysis

Claimants argue that the district court erred by signing the proffered decree of forfeiture without requiring the government to prove that the assets were forfeitable, based on their connection to the criminal indictment.  Claimants specifically argue that the government was

---

discussion, the Second Circuit also doubted that we had determined that summary judgment standards were always appropriate in our opinion in *Salti*. *Id.* at 381.  However, we need not delve into the specific holdings of *Salti* given the unusual circumstances of this case.

required to move, under Federal Rule of Civil Procedure 55, for an entry of default judgment. Claimants further argue that, had such a motion occurred, the government would have been required to prove, by a preponderance of the evidence, that the defendant assets were subject to forfeiture. Finally, Claimants argue that Mrs. Salouha's release of her interest in the assets did not establish that forfeiture was appropriate, as she had no authority under Ohio law to stipulate to the forfeiture of assets listed in only Salouha's or HYS Health Mart, Inc.'s name.

The government, in contrast, argues that it was not required to move for default judgment under Rule 55, as civil *in rem* forfeitures are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), which do not incorporate the requirements of Rule 55. In addition, Rule 55 talks in terms of seeking a default "[w]hen a party *against whom a judgment of affirmative relief is sought* has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a) (emphasis added). The government argues that the party from whom affirmative relief is sought is the defendant assets, not Claimants, meaning Rule 55 is inapplicable. Finally, according to the government, Claimants are not treated as defendants for purposes of civil forfeiture actions, meaning they are not entitled to the same procedural rights. For this proposition, the government analogizes to the more lenient notice requirements for civil forfeiture proceedings as compared to traditional civil suits.

Given that we have affirmed the district court's disentitlement decision, Claimants no longer have statutory standing to contest procedural mistakes in the forfeiture action. *See United States v. Real Properties & Premises*, 521 F. App'x 379, 384 (6th Cir. 2013) (noting that "[t]o contest a forfeiture action, a claimant must establish statutory standing" by timely filing a verified claim and an answer). Indeed, to hold otherwise would render meaningless the fugitive disentitlement statute, which was enacted to prevent

> the unseemly spectacle . . . of a criminal defendant who, facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction.

*Collazos*, 368 F.3d at 200. Such has been the approach of the Ninth Circuit, in *United States v. $671,160.00 in U.S. Currency*, 730 F.3d 1051 (9th Cir. 2013), where the court declined to

consider the claimant's arguments regarding "probable cause to search his vehicle, seize the defendant funds, or initiate criminal proceedings against him" because the claimant's claims had properly been stricken. *Id.* at 1059; *United States v. $6,190.00 in U.S. Currency*, 581 F.3d 881, 885 (9th Cir. 2009) ("The fugitive disentitlement doctrine prohibits an individual from using the courts to further one claim while avoiding the courts' jurisdiction on another matter."); *see also United States v. Technodyne LLC*, 753 F.3d 368, 381 (2d Cir. 2014) (noting that the fugitive disentitlement statute "is not meant to address a claim or defense on its merits; it provides an ancillary basis for disallowing a claim"). Similarly, under the prior fugitive-from-justice doctrine, which Congress adopted in enacting § 2466, fugitive claimants were barred from arguing that the government did not establish the factual predicates for forfeiture. *See United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami*, 868 F.2d 1214, 1216–17 (11th Cir. 1989).

However, even if we were to consider Claimants' procedural deficiency challenge, we would still affirm the district court's judgment. While it is true that the general practice, and perhaps the best practice, is for the government to seek default and default judgment in civil *in rem* forfeiture cases, *see, e.g.*, *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010); *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004); *Technodyne LLC*, 753 F.3d at 376, failure to do so is not fatal to the government in this case. Indeed, "we are free to affirm the judgment on any basis supported by the record," *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002), and such a basis is present here. Because the only evidence in this case supports a finding that the properties seized by the government were involved in illegal prescription drug sales and money laundering, the government would have prevailed had it moved for default judgment.

For assets seized by the government in connection with drug crimes, forfeiture is appropriate if the money was offered in exchange for a controlled substance, if the money was traceable to such an exchange, or if the money was intended to facilitate any drug crime. 21 U.S.C. § 881(a)(6). The government sought forfeiture of additional assets due to their connection to Salouha's money laundering scheme. Such funds are forfeitable if they are "involved in a transaction or attempted transaction in violation of section 1956," the money

laundering statute. 18 U.S.C. § 981(a)(1)(A). The government must establish that the defendant properties are subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c)(1).

In this case, the only evidence in the record is the verified complaint filed by the government. *See Am. Civil Liberties Union of Ky. v. Grayson Cty.*, 591 F.3d 837, 844 n.2 (6th Cir. 2010) ("A verified complaint carries the same weight as would an affidavit for the purposes of summary judgment." (internal quotation omitted)). Moreover, because Claimants' claims and answers were stricken from the record, those allegations remain unrebutted, and default judgment was entered. Such a judgment "is unassailable on the merits," but only if there was a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Thus, before entering judgment in favor of the government, the district court had a duty to ensure that the allegations in the verified complaint were sufficient. *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (noting that the district court should have "consider[ed] whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998))); *see also Ohio Cent. R. Co. v. Central Trust Co.*, 133 U.S. 83, 91 (1890) ("[A]lthough the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree."). While the district court appears to have failed to meet this obligation, our review of the verified complaint reveals that it sufficiently alleges that the defendant assets are forfeitable based on their connection to criminal activity, rendering entry of judgment appropriate.

For example, the complaint asserts that "Salouha [was] illegally selling prescription drugs, e.g., Oxycodone, Oxymorphone and Hydrocodone to individuals in violation of 21 U.S.C. § 841." (R. 1, Complaint, PageID #5.) As part of its investigation, the government conducted an audit of one of Salouha's pharmacies and found that it was purchasing enormous quantities of these pills, especially compared to what a new pharmacy of that size would be expected to order. The circumstantial evidence thus indicates that Salouha was involved in illegal sales of

controlled substances and that the money offered in exchange for these sales was forfeitable under 21 U.S.C. § 881(a)(6).

Salouha was also charged with laundering the proceeds of his illegal drug sales through his personal and business accounts in order to conceal the source of the illegal funds. The forfeiture complaint alleges that funds received from the pharmacy, including the illegal drug money, were commingled with other money in Salouha's personal and business bank accounts. The complaint describes how payroll deposits from the pharmacy were made to personal bank accounts in Salouha's name, and how proceeds from those accounts were then transferred to other accounts held by Salouha, including his brokerage account. The complaint further alleges that funds from Salouha's account were transferred to accounts in the names of his children over a three-year period, but then almost $85,000 was abruptly transferred back to Salouha's account. Almost all this money was then moved to another account in Salouha's name through the course of nine separate transactions over a ten-week period. This money was ultimately transferred out of the country through three separate wire transfers to the Bank of Palestine Gaza and the National Bank of Abu Dhabi. These facts are sufficient to establish a forfeiture claim against the defendant assets based on allegations of money laundering. Therefore, were we to reach Claimants' argument regarding the district court's procedural error of ordering forfeiture, Claimants still would not be entitled to relief.

## CONCLUSION

For the foregoing reasons, we **DENY** the government's motion to dismiss the appeal as untimely and **AFFIRM** the judgment of the district court.